FILED

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

98 NOV -6 AM 9:43
U.S. DISTRICT COURT
N.D. OF ALABAMA

| | |
|---|---|
| VIRGINIA KELLEY, | ] |
| Plaintiff(s), | ] |
| vs. | ] CV 97-N-2180-NE |
| JACK'S TRUCK STOP, INC., et al., | ] |
| Defendant(s). | ] |

ENTERED
NOV 06 1998

### Memorandum of Opinion

In this action, the plaintiff, Virginia Kelley ("Kelley"), brings claims against the defendants, Jon Tom, Inc. d/b/a Jack's Truck Stop ("Jack's"), John T. Parker, Sr. and John T. Parker, Jr., pursuant to the Fair Labor Standards Act, as amended, 29 U.S.C. § 201 *et seq.* ("FLSA"). Specifically, the plaintiff asserts that the defendants failed to pay her overtime for her work as Assistant Manager at Jack's in violation of the FLSA.

The matter is presently before the court on the defendants' motion for summary judgment, filed on September 14, 1998. The motion, having been briefed by the parties, is now ripe for decision. Upon due consideration, the motion will be denied.

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings,

depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). "If the moving party will bear the burden of persuasion at trial, that party must support its motion with credible evidence . . . that would entitle it to a directed verdict if not controverted at trial." *Id* at 2557 (Brennan, J. dissenting); *see Turnes v. Amsouth Bank, NA*, 36 F.3d 1057, 1062 & n.11 (11th Cir. 1994) (quoting same).

Defendants' sole argument in support of summary judgment is that Kelley, as Assistant Manager, fell within the executive exception to the FLSA's overtime provisions. The pertinent statutes exempt from the FLSA's requirements "any employee employed in a bona fide executive . . . capacity." 29 U.S.C. § 213(a)(1). The burden of proving the applicability of this exception is on the defendants. *Brock v. Norman's Country Market, Inc.*, 835 F.2d 823, 826 (11th Cir. 1988). Moreover, the Eleventh Circuit has recently re-emphasized that courts "must be mindful of the Supreme Court's admonition that courts closely circumscribe the FLSA's exemptions. 'Any exemption . . . must therefore be narrowly construed.' . . . 'To extend an exemption to other than those plainly and unmistakably within its terms and spirit is to abuse the interpretive process and to frustrate the announced will of the people.'" *Nicholson v. World Business Network, Inc.*, 105 F.3d 1361, 1364 (11th Cir. 1997). Thus defendants can satisfy their initial burden on summary judgment only by coming forward with proof that Kelley's position plainly fell within the FLSA's executive exemption.

2

In making this determination, the court is guided by the Department of Labor's regulations interpreting and implementing the FLSA. Those regulations indicate that an employee should be considered a bona fide executive if she "is compensated on a salary basis at a rate of not less than $250 per week" and her "primary duty consists of the management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof, and includes the customary and regular direction of the work of two or more other employees therein." 29 C.F.R. § 541.1(f). The latter requirement is met only by the supervision of "at least two full-time employees or the equivalent. For example, if the 'executive' supervises . . . four part-time employees, two of whom work in the mornings and two afternoons, this requirement would be met." 29 C.F.R. 541.105(a). In other words, at a minimum the "executive" must be responsible for supervising employees working the same man-hours as two full-time employees, or eighty hours a week. Kelley admits that she was paid a salary of more than $250 per week, but argues that neither of the other requirements of the regulations have been met.

Both parties have devoted the bulk of their argument to the question of whether Ms. Kelley's primary duty was management. The undisputed facts submitted by the parties indicate that Kelley worked as an assistant manager of Jack's, and was the only manager of the second shift, which ran from 2:30 to 11:30. There is some dispute about the extent of Kelley's supervisory powers and responsibilities, but both parties agree that Ms. Kelley spent a large portion of her time working on general tasks around the store. Indeed defendants admit that she "spent no more than 15-20 minutes on any given shift communicating to other employees various instructions," *Defendants' Responses to*

3

*Plaintiff's Facts* No. 34, and "spent a maximum of 5% of her work day in activity that might be considered supervisory." *Id.* No. 36. However, defendants contend that Kelley was nonetheless primarily engaged in management because she was the person "in charge" of the second shift. Defendants cite a number of cases which they argue stand for the proposition that an employee, however limited in power and however involved in the ordinary work of the store, who is left in charge of a convenience store or similar establishment has management as her primary duty. *See Donovan v. Burger King Corp.*, 672 F.2d 221 (1st Cir. 1982); *Sturm v. TOC Rental, Inc.*, 864 F. Supp. 1346 (M.D. Ga. 1994); *Murray v. Stuckey's, Inc.*, 939 F.2d 614 (8th Cir. 1991). In response, the plaintiff argues that being "in charge," without some managerial responsibilities and discretion, is not enough to qualify under the FLSA's exemption. The parties have thus framed an interesting question regarding the interpretation of the FLSA's standards and regulations.

The court finds it unnecessary to address this question at this point, however, because the defendants have what can only be regarded as a math problem. The evidence, as viewed in the light most favorable to the plaintiff, indicates that the other second shift employees at Jack's worked at most sixty-four hours a week. In other words, even if she was "in charge" of the second shift, Kelley was not supervising enough second shift employees to qualify as the equivalent of two full time employees. Recognizing this problem, the defendants contend that Kelley *also* supervised the employees on the third shift. *Defendants' Reply Submission in Response to Exhibit D of This Court's Order*, at 4. While this might be true, the court finds that the defendants have failed to carry their initial

4

summary judgment burden on this issue, and thus have not shown that Kelley qualifies for the executive exemption.

Neither party has been particularly careful in laying out the facts relating to Kelley's involvement with the third shift.[1] However, it appears that Kelley generally left the premises after the second shift and was not physically present for the third shift. Kelley "worked on the second shift, which ran between 2:30 [P.M.] to 11:30." *Defendants' Statement of Facts* No. 5. When asked when she got off work, Kelley responded that she "got out from behind the counter usually around 11:00." *Kelley's Depo.* at 70, 118. There would be some overlap during the shift change, when Kelley would see the third shift workers. *Kelley's Depo.* at 115-16, 118. Both parties agree that there was no assistant manager on duty during the third shift. *Defendants' Responses to Plaintiff's Facts* No. 34. Thus Kelley would sometimes relay instructions to the night shift workers that management told her to relay. *Kelley's Depo.* at 70, 118. However, according to her version on events, this was all she ever did.

Defendants do not counter this claim with any probative evidence of their own. Instead, they reply by citing portions of Kelley's deposition testimony which they claim indicate that she was "in charge" of the third shift as well. *See, e.g., Kelley's Depo.* at 111, 115-16. These passages certainly establish that Kelley "sometimes . . . would relay things to night workers that upper management told her to relay," a fact which Kelley readily admits. *Opponent's Statement of Undisputed Facts* No. 33. However, any implication that

---

[1] Of course, to the extent there remains ambiguity and confusion about the factual questions involved, the defendants, who bear the burden of proof and production both here and at trial on this issue, must suffer the consequences.

5

Kelley did more than this is ambiguous at best.[2] Moreover, the most these passages indicate is that Kelley might call what she did being "in charge" of the third shift. There is nothing which indicates factually that Kelley did more than relay instructions. Her vague statements that she was "supervis[ing]" third shift employees or was "in charge" of them certainly does not contradict her testimony that what she actually *did* was pass on instructions from others.[3] Even if she denominates this as "supervision" or being "in charge," this court need not conclude that she was supervising these employees within the technical meaning of the FLSA regulations.

Taking the facts in the light most favorable to the plaintiff, the evidence indicates only that Kelley occasionally relayed instructions from the owner and manager, who worked during the day, to the night employees. The question becomes whether this is

---

[2] For example, defendants cite repeatedly to the following exchange.

Q. .... Did you ever supervise Frances Sarich?

> A. *Very little because she always worked third shift. The only time we worked together was if she was called in or something.*

Q. You do remember supervising her?

> A. I didn't really supervising [sic] her because she done her job.

Q. But you were in charge of her?

> A. *I was there in charge, yeah, I guess of the shift, if that's what you want to call it.*

Kelley's Depo. at 111 (emphasis added). It is simply not clear if plaintiff is talking about being in charge of Sarich during the third shift, or during the times she was "called in" to work on the second shift, which plaintiff was in charge of.

[3] Kelley used terms like "in charge" and "supervision" with a fair degree of flexibility and uncertainty. Asked whether a third shift was under her supervision, she said, "He was there when they told me to tell him to do things, yes. Which would mean the same thing, I presume." Kelley's Depo. at 115. Likewise, in the passage cited in note 2, Kelley indicated that she was "in charge ... I guess of the shift, if that's what you want to call it." *Id.* at 111.

6

sufficient, as a matter of law, to constitute supervision of those employees. The court concludes that it is not.

The statute and regulations provide no particular guidance on this question. In such situations, the courts must "refer to common sense to answer [FLSA] issues before them." *Sturm*, 864 F. Supp. at 1350. The court takes its cue from the very cases relied on by the defendants. As a practical matter, supervision is the task of "'[e]nsuring that company policies are carried out.'" *Sturm*, 864 F. Supp. at 1353 (quoting *Donovan*, 672 F.2d at 226). "Supervision is the equivalent of oversight." *Id.* at 1354 n.9. A manager who is on site and in charge, watching over employees, may well be supervising even if her role is a relatively passive one and her influence limited. A manager in such a situation is overseeing merely by being present and watching events. This is the crux of defendants' argument that being "in charge" is a management activity.

However, as *Sturm* notes, when a manager is not physically present to oversee events, they are "supervising" only if they are effectively controlling the situation from afar. In this court's view, long-distance supervision of this type requires more active involvement than is shown by the evidence here. The only way for an absent manager to ensure that tasks are being performed properly is to check up on employees after they have completed their tasks, uncover any problems, and issue instructions to correct them. Thus, for example, *Sturm* found that an absent manager was supervising night employees within the meaning of the FLSA when he left notes with instructions for the employees, checked up on their performance when he came on during the day, and was available at night to handle emergencies. *Id.* at 1354 & n. 9.

7

What Kelley did, at least under her version of the facts, was nothing like the circumstances present in *Sturm*. She did not note deficiencies and issue instructions to correct them. She did nothing to ensure that the instructions she did pass on were being followed. Nor was she the "go to" person if problems arose. All of these functions, which *Sturm* defined as supervision, were performed by the owner and the day manager, not Kelley. All she was, at least according to her testimony, was a conduit for their orders. Therefore the court finds, as a matter of law, that this limited involvement does not constitute "supervision."

Taking the facts in the light most favorable to the plaintiff, as it must at this stage of the proceedings, the court finds that Kelley did not supervise two full time employees or the equivalent. Therefore she does not qualify as an executive as a matter of law. Factual questions, including the number of man-hours actually spent by employees on the second shift and the level of Kelley's involvement in the management of the second and third shifts remain, barring judgment as a matter of law on the executive exception prior to trial. Therefore defendants' motion for summary judgment will be denied. The court will enter an order in conformity herewith.

Done, this 5th of November, 1998.

_____
EDWIN L. NELSON
UNITED STATES DISTRICT JUDGE